UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY ALLEN BRYANT,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security,<br><br>Defendant. | No. 2:14-cv-1934-KJN<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from August 1, 2009, through the date of the final administrative decision.  (ECF No. 12.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 13.)  Plaintiff filed a response to defendant's cross-motion for summary judgement.  (ECF No. 14.)

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 6, 9.)

For the reasons that follow, the court grants plaintiff's motion for summary judgment in part, denies the Commissioner's cross-motion for summary judgment, and remands the case for further proceedings under sentence four of 42 U.S.C. § 405(g).

I.   BACKGROUND

Plaintiff was born on January 25, 1974, has a high school education and is able to communicate in English. (Administrative Transcript ("AT") 29, 47-48.)[2] He has worked as a garage door installer. (AT 48, 202.) On February 22, 2011, plaintiff applied for DIB and SSI, alleging that his disability began on August 1, 2009, at the age of 35. (AT 21, 29, 47, 69.) Plaintiff alleged that he was disabled primarily due to complications arising from having previously broken both of his ankles, and knee and back pain. (AT 26, 201.) After plaintiff's applications were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on September 12, 2012, and at which plaintiff, represented by a non-attorney representative, testified. (AT 45-68.) The ALJ issued a decision dated February 7, 2013, determining that plaintiff had not been under a disability, as defined in the Act, between August 1, 2009, and the date of that decision. (AT 18-30.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on June 17, 2014. (AT 3-6.) Plaintiff then filed this action in federal district court on August 20, 2014, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly rejected the opinions of plaintiff's treating, examining, and non-examining physicians regarding plaintiff's physical impairments; (2) whether the ALJ erroneously failed to consider whether plaintiff's impairments met or equaled Listings 1.02, 1.06, or 11.14 in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) whether the ALJ erroneously failed to identify plaintiff's additional severe

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

impairments; (4) whether the ALJ erroneously discounted plaintiff's own testimony concerning his symptoms and functional limitations; and (5) whether the ALJ erred by failing to obtain the testimony of a vocational expert at step five of the sequential analysis.

III.  LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). However, the court may only consider the reasons given by the ALJ for his decision and "may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630.

IV.  DISCUSSION

   A.  Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ found that plaintiff

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

   Step one: Is the claimant engaging in substantial gainful activity? If so, the
   claimant is found not disabled. If not, proceed to step two.

remained insured for purposes of DIB through December 31, 2014. (AT 23.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since August 1, 2009, the alleged onset date. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments: "peripheral neuropathy and fracture of the lower extremity." (Id.) At step three, the ALJ provided the following without further discussion:

> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR404.1420(d), 404.1525, 4041426, 416.1526, 416.920(d), 416.926 and 416.926)."

(AT 25.)

Before proceeding to step four, the ALJ next found plaintiff to have the residual functional capacity ("RFC") "to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." (Id.)

At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. (AT 29.) At step five the ALJ determined that, in light of plaintiff's age (a younger individual), education (at least high school with ability to communicate in English), work experience, and residual functional capacity, there were jobs that existed in significant numbers in

---

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

the national economy that plaintiff could perform.  (Id.)  Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from August 1, 2009, through the date of the ALJ's decision.  (Id.)

   B.  <u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

     *1.* *Whether the ALJ erred in considering the medical opinion evidence in the record when determining plaintiff's RFC*

Plaintiff asserts that the ALJ erroneously discounted the opinions of Drs. Olson, Hoenig, Dann, and Jaituni by improperly favoring his own interpretation of the underlying medical evidence over the medical judgment of these physicians and failing to provide sufficient reasons supported by substantial evidence for discounting all four of these physicians' opinions.  The court finds plaintiff's argument persuasive.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201-02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion.  <u>Holohan</u>, 246 F.3d at 1202.

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, <u>Edlund</u>, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); <u>see also</u> <u>Magallanes</u>, 881

---

[4] The factors include:  (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization.  20 C.F.R. § 404.1527.

1  F.2d at 751.  The opinion of a non-examining professional, by itself, is insufficient to reject the
2  opinion of a treating or examining professional.  Lester, 81 F.3d at 831.
3        To evaluate whether an ALJ properly rejected a medical opinion, in addition to
4  considering its source, the court considers whether (1) contradictory opinions are in the record;
5  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a
6  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81
7  F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be
8  rejected for "specific and legitimate" reasons.  Id. at 830.
9        Failing to articulate reasons, or articulating conclusory reasons without giving specific
10 examples is error under both these standards.  Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir.
11 2014) (holding "an ALJ errs when he rejects a medical opinion or assigns it little weight while
12 doing nothing more than ignoring it, asserting without explanation that another medical opinion is
13 more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis
14 for his conclusion"); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (finding ALJ who
15 discounted medical opinions because other opinions were "more objective" did not satisfy the
16 specific and legitimate reasons test); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)
17 (finding that when an ALJ fails to articulate reasons for discounting opinion, the ALJ's decision
18 cannot be said to be supported by substantial evidence in the record).
19       Here, four physicians in the record issued opinions concerning the functional impact of
20 plaintiff's physical impairments.[5]  Dr. Olson, plaintiff's treating physician, issued a physical

---

[5] Plaintiff also asserts that the ALJ improperly failed to discuss what weight, if any, he assigned to the medical opinion issued by Dr. Song, one of plaintiff's treating physicians.  While Dr. Song's treatment notes (AT 292-97) may constitute a medical opinion or opinions in the broadest sense, any failure by the ALJ to consider them was harmless error for two reasons.  First, Dr. Song does not provide any opinion regarding the function-by-function impact of plaintiff's physical impairments, such as how much plaintiff can lift and carry; how long plaintiff can walk, stand, or sit; or if plaintiff has any manipulative, postural, or environmental limitations.  (Id.)  Second, Dr. Song's notes contain only the cursory conclusions that plaintiff "cannot sustain his work" and "can definitely qualify for Disability," which are opinions on issues reserved for the Commissioner.  (AT 293.)  See 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); Allen v. Comm'r of Soc. Sec., 498 Fed. App'x 696, 696 (9th Cir. 2012) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1)-(2)) ("A treating physician's opinion on the

6

1  medical source statement on January 12, 2012.  (AT 271-73, 401-03, 421-23.)  Dr. Hoenig, an

2  examining physician, provided a medical source statement on December 15, 2012.  (AT 428-37.)

3  Dr. Dann, a non-examining physician, reviewed plaintiff's medical records and opined on the

4  impact of plaintiff's physical impairments as a part of plaintiff's initial application for disability

5  benefits.  (AT 73-75, 83-85.)  Dr. Jaituni, a second non-examining physician, reviewed Dr.

6  Dann's opinion and affirmed it as part of the reconsideration of plaintiff's application.  (AT 95-

7  100, 107-12.)

8      Dr. Olson opined that plaintiff could stand and/or walk fewer than two hours and sit for

9  eight hours total in an eight-hour workday.  (AT 272.)  She further opined that plaintiff needed a

10 job that permitted shifting positions at will, and that he could never lift more than ten pounds and

11 only rarely lift less than ten pounds.  (Id.)  She opined that plaintiff could never stoop or bend,

12 crouch or squat, or climb ladders or stairs.  (Id.)  She opined that plaintiff was constantly in

13 enough pain to interfere with the attention and concentration needed to perform even simple work

14 tasks and was incapable of even low stress jobs.  (AT 273.)  Finally, in Dr. Olson's opinion,

15 plaintiff would need to be absent from work more than four days a month due to his impairments.

16 (Id.)

17     Dr. Hoenig opined that plaintiff could walk and/or stand up to 15 minutes at a time and up

18 to a total of 2 hours in an eight-hour workday.  (AT 429.)  Dr. Hoenig further opined that plaintiff

19 could sit without interruption for a total of eight hours in an eight-hour workday.  (Id.)  Dr.

20 Hoenig also opined that plaintiff had no limitations in lifting, and could carry twenty pounds

21 occasionally and ten pounds frequently.  (AT 437.)  Dr. Hoenig opined that plaintiff could

22 occasionally climb, balance, stoop, kneel, crouch, and crawl, and had no limitations with regard

23 to manipulative activities.  (Id.)  Finally, Dr. Hoenig opined that plaintiff could not work at

24

---

availability of jobs and whether a claimant is disabled are opinions on issues reserved to the
25 Commissioner.").  "A treating source's opinion on issues reserved to the Commissioner can never
be entitled to controlling weight or given special significance."  Allen, 498 Fed. App'x at 696
26 (citing SSR 96-5p, 1996 WL 374183 *5).  Therefore, while it may have been technical error for
the ALJ to totally ignore the opinions contained in Dr. Song's notes, to the extent that they could
27 be construed as opinions under the relevant regulations, any such error was harmless because Dr.
28 Song opined solely on issues that were reserved to the ALJ.

heights. (Id.)

During the Social Security Administration's initial consideration of plaintiff's application, Dr. Dann reviewed plaintiff's medical records and gave a non-examining opinion. (AT 68-88.) Dr. Dann opined that plaintiff could stand and/or walk for two hours and sit for more than six hours total in an eight-hour workday. (AT 74.) Dr. Dann opined that plaintiff could lift ten pounds frequently and had no manipulative limitations. (AT 74-75.) Dr. Dann also opined that plaintiff could frequently stoop, bend, and kneel; occasionally balance, crawl or climb ramps and stairs; and never crouch, or climb ladders, ropes, or scaffolds. (AT 75.) Dr. Dann opined further that plaintiff had environmental limitations against extreme cold, vibrations, and heights. (AT 75-76.) On reconsideration of plaintiff's application, Dr. Jaituni reviewed plaintiff's medical records and produced an opinion agreeing with the functional limitations opined by Dr. Dann. (AT 98-100.)

After summarizing the opinions and the medical evidence as a whole (AT 25-28), the ALJ addressed and weighed the above medical opinions as follows:

> Regarding the opinion evidence, [Dr. Dann, Dr. Jaituni] and Dr. Hoenig find that there is sufficient evidence to find the claimant's osteoarthritis limits him to less than sedentary work. This is generally consistent with the findings of Dr. Olsen[sic]. Although Dr. Olsen[sic] assessed very restrictive limitations in a Medical Source statement, in a later statement Dr. Olsen[sic] noted that May 7, 2012 was the date she anticipated the claimant would return for evaluation to return to work without the limitations discussed in her Medical Source statement dated January 12, 2012. Although the undersigned finds these assessments too restrictive, the undersigned finds that the medical evidence they relied on support the residual functional capacity as determined by the undersigned above.

(AT 28.)

Because the ALJ concluded that that the opinions of all four doctors who addressed plaintiff's physical impairments, Dr. Olson, Dr. Hoenig, Dr. Dann, and Dr. Jaituni, were "generally consistent" with one another, there was no contradictory opinion in the record with regard to the functional impact of plaintiff's physical impairments. (Id.)

Therefore, the ALJ was required to identify "clear and convincing reasons" for rejecting the uncontradicted opinions of these physicians. Lester, 81 F.3d at 830-31. However, for the reasons discussed below, the ALJ's reasoning for apparently discounting these physicians' opinions failed to meet this more stringent standard, and, indeed, even the less rigorous "specific and legitimate reasons" standard.

The ALJ's brief discussion of these physicians' opinions, which appears in its entirety above, indicates that the ALJ substituted his own reading of these physicians' raw medical findings and examination notes for these physicians' own medical judgments to determine that plaintiff was somewhat less limited than what the four physicians opined. Indeed, instead of providing any specific evidentiary support for his reasoning that the these opinions were "too restrictive," the ALJ merely stated that his determination that plaintiff could perform the full range of sedentary work was based on the same "medical evidence [these opinions] relied on," thus specifying that the ALJ relied on his own interpretation of these physicians' examination and treatment notes to determine plaintiff's RFC in lieu of considering and weighing their opinions regarding plaintiff's physical functioning. AT 28. Such reasoning was impermissible, and did not amount to a "clear and convincing" reason for discounting the uncontroverted opinions of all four physicians. See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (As a lay person, the ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion"; he is "simply not qualified to interpret raw medical data in functional terms."); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . ." (citations and quotation marks omitted)); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) (the ALJ "must not succumb to the temptation to play doctor and make [his] own independent medical findings."); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) (the ALJ may not substitute his interpretation of laboratory reports for that of a physician).

Furthermore, the ALJ's single conclusory statement that these physicians' examining and treating notes support his RFC determination over the physicians' opinions

cannot, without a more substantive discussion of why that medical evidence supported his conclusion, constitute even a specific and legitimate reason for rejecting the physicians' opinions. Garrison, 759 F.3d at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."). While the ALJ recited the medical findings on which each of the four opinions are based in considerable detail in his review of the medical evidence (AT 25-28), this narrative gives no indication of how any particular facts support the ALJ's RFC determination over those opined by plaintiff's physicians. The ALJ's sole and conclusory assertion that the medical physicians' medical records supported his RFC determination is insufficient to allow the court to find that his decision is supported by substantial evidence, and is therefore prejudicial error.

As it is currently articulated, the ALJ's reasoning, at best, leaves the court unable to accurately assess whether the ALJ properly weighed the medical opinion evidence. Moreover, it indicates that the ALJ improperly interpreted the raw medical information contained in the physicians' examination reports in lieu of truly considering and weighing the opinions of those physicians. Accordingly, the ALJ committed prejudicial error in his assessment of the opinions of Drs. Olson, Hoenig, Dann, and Jaituni because he articulated no clear and convincing, or even specific and legitimate, reasons supported by substantial evidence on which to base his conclusion that these opinions were "too restrictive." Tackett, 180 F.3d at 1097.

The Commissioner argues in her cross-motion for summary judgment that the ALJ actually assigned greater weight to the opinions of Drs. Hoenig, Dann, and Jaituni, and lesser weight to Dr. Olson when determining plaintiff's RFC. However, this assertion mischaracterizes the ALJ's discussion of this evidence because the ALJ clearly highlighted in his decision that he found all of these physicians' opinions "too restrictive," thus indicating that he was discounting all of them, not just Dr. Olson's opinion. (AT 28.) The Commissioner also provides several additional reasons in support of the ALJ's

10

1  decision to discount the opinions of the four physicians.  However, the ALJ did not rely
2  on these or any other reasons beyond the improperly-supported one discussed above as
3  part of his analysis, and the court is not permitted to make ad hoc rationalizations for the
4  ALJ.  Orn, 495 F.3d at 630 (the court "may not affirm the ALJ on a ground upon which he
5  did not rely"); Barbato v. Comm'r, 923 F.Supp. 1273, 1276, n.2 (C.D. Cal. 1996).  Indeed,
6  a reviewing court cannot affirm an ALJ's decision denying benefits on a ground that was
7  not invoked by the ALJ.  Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing
8  Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)).

       *2.   Whether the ALJ erred at step three by failing to consider Listings 1.02, 1.06 and 11.14*

   Plaintiff argues that the ALJ also erred at step three of the sequential analysis by failing to specifically consider and discuss whether plaintiff's impairments met or equaled the requirements of Listings 1.02, 1.06, and 11.14.  The court agrees.  The ALJ's conclusory determination that plaintiff's impairments did not meet or equal listing level severity without further explanation or consideration of specific listings highlighted by plaintiff was also error.

   As Drs. Dann and Jaituni both noted in their opinions, the medical evidence prompted consideration of Listings 11.14, "peripheral neuropathy," and 1.06, "fracture of a lower extremity."  (AT 73, 83, 97, 109.)  The ALJ found that plaintiff's peripheral neuropathy and fracture of a lower extremity constituted severe impairments.  (AT 23.)  As these impairments have corresponding listings and there existed objective medical evidence in the record regarding their symptoms and severity, the ALJ should have expressly considered and discussed those listings in his decision and provided reasons why plaintiff's impairment failed to meet or equal the requirements of those listings.  Furthermore, plaintiff had medical evidence of degeneration in the left ankle, including ankylosing (AT 292), narrowing in the joint (AT 310), and avascular necrosis, (AT 329-30, 353-54).  Given this evidence, the ALJ should also have considered and specifically discussed whether plaintiff's impairment met or equaled the requirements of Listing 1.02.

////

1    These listings require factual determinations such as whether plaintiff was unable to
2    "ambulate effectively" or whether plaintiff had "persistent disorganization of motor function." 20
3    C.F.R. § Pt. 404, Subpt. P, App. 1, Listings 1.02, 1.06, 11.14.  While plaintiff has the burden of
4    showing all elements of a listing, it is the ALJ's role to develop and review the evidence and
5    make factual findings.  Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005); Celaya v. Halter,
6    332 F.3d 1177, 1183 (9th Cir. 2003); Edlund, 253 F.3d at 1156.  Because the ALJ failed to
7    articulate any reasons in support of his decision that no listings applied, such as highlighting
8    specific medical evidence in support of such a determination or noting plaintiff's failure to meet
9    his burden of proof on an essential element of a particular listing, his step three decision was not
10   supported by substantial evidence and, therefore, was erroneous.  Connett, 340 F.3d at 873; Orn,
11   495 F.3d at 630.

    3.    *Remand of this Case for Further Proceedings is Warranted in Light of the ALJ's Errors.*

   Plaintiff argues that the ALJ's prejudicial errors warrant remand for the award of benefits.  The court disagrees and finds that the ALJ's errors instead warrant remand for further proceedings.

   When the court finds that the ALJ committed prejudicial error, it has the discretion to remand or reverse and award benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020 (9th Cir. 2014).  Nevertheless, even when the "credit-as-true" criteria have been met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."  Id. at 1021; see also Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("[W]e generally remand for an award of

benefits only in rare circumstances, . . . where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." (citations and quotation marks omitted)).

Here, the ALJ's errors require this matter to be remanded for further proceedings. As discussed above, the ALJ failed to properly consider and discuss the opinions of Drs. Olson, Hoenig, Dann, and Jaituni in a manner that permits the court to accurately assess whether the ALJ properly weighed the medical opinion evidence in the record when determining plaintiff's RFC, and, ultimately, whether the ALJ's RFC determination was supported by substantial evidence. Accordingly, further administrative proceedings are warranted to allow the ALJ an opportunity to properly consider and weigh these opinions. Similarly, the ALJ's error at step three also leaves the court unable to consider the propriety of the ALJ's conclusion that plaintiff's impairments did not meet or equal listing-level severity. Therefore, further administrative proceedings will also give the ALJ an opportunity to either adequately explain his step three determination, or reconsider it entirely.

In addition, the record as a whole creates serious doubt as to whether plaintiff is disabled within the meaning of the Act. For instance, Dr. Olson's findings regarding plaintiff's ability to stand, walk, and sit during the course of an eight hour day do not appear to conflict with the definition of sedentary work under the regulations despite the ALJs reasoning that it was "too restrictive" in light of the ALJ's own finding that plaintiff had the ability to perform the full range of sedentary work. (See AT 28, 429); 20 C.F.R. §§ 404.1567(a), 416.967(a). Furthermore, Drs. Dann and Jaituni expressly found that plaintiff was still capable of jobs present in significant numbers in the national economy, such as addresser, nut sorter, and button reclaimer, even in light of their RFC determinations that the ALJ found to be "too restrictive." (AT 28, 77, 101.)

Accordingly, this matter must be remanded for further proceedings. On remand, the ALJ shall reassess the medical opinion evidence in the record and clearly discuss, physician-by-physician, what, if any, weight he assigned to each opinion, his reasons for making such a determination, and why substantial evidence supports such a determination. Furthermore, the ALJ shall consider whether plaintiff's physical impairments met or equaled the requirements of

Listings 1.02, 1.06, and 11.14, and include a specific discussion of his reasons in support of his step three conclusion.  The ALJ is also free to develop the record in other ways, as needed.

Importantly, the court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand.  The court also does not instruct the ALJ to credit any particular opinion or testimony.  On remand, the ALJ may determine that any, some, or all of medical opinions in the record, are entitled to controlling weight, substantial weight, reduced weight, or no weight at all—provided that the ALJ's determination complies with applicable legal standards, is clearly articulated via appropriate reasoning provided in the decision, and is supported by substantial evidence in the record.  On a similar basis, the ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period.

### 4. *Other Issues*

In light of the court's conclusion that the case must be remanded for further analysis of the medical evidence at step three and with regard to plaintiff's RFC, the court declines to reach the remaining issues presented by plaintiff.  The ALJ's decisions, and the court's review of those decisions, regarding issues such as whether plaintiff had any additional severe impairments, whether plaintiff's testimony is credible, and whether the ALJ was required to call a vocational expert are heavily dependent on the ALJ's determinations regarding the medical evidence.  Therefore, it cannot be adequately determined at this time whether the ALJ's decisions regarding those other areas at issue were proper and supported by substantial evidence.  On remand, the ALJ will have an opportunity to further consider these issues, and address the medical evidence and non-medical testimony in context of the record as a whole.  The ALJ will also be free to reevaluate his analysis and/or further develop the record with respect to any or all of these additional issues.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is GRANTED IN PART.

     2.      The Commissioner's cross-motion for summary judgment (ECF No. 13) is DENIED.

     3.      The action is remanded for further proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).

     4.      Judgment is entered for plaintiff.

IT IS SO ORDERED.

Dated: February 4, 2016

_/s/ Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE